N THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| P.W. and Cheryl W., Individually and as Parent and Guardian of P.W., <br><br>Plaintiffs, <br><br>v. <br><br>BOARD OF EDUCATION OF BLOOM TOWNSHIP HIGH SCHOOL DISTRICT NO. 206; DR. LENELL NAVARRE, in his Official Capacity as Superintendent; ILLINOIS STATE BOARD OF EDUCATION, <br><br>Defendants. | Case No.: 16-cv-1571 |

## COMPLAINT

NOW COME the Plaintiffs, P.W. and Cheryl W., individually and as parent and guardian of P.W., by their attorneys, Equip for Equality, Inc., and complain as follows:

### INTRODUCTORY STATEMENT

1) This action is a timely appeal of an administrative ruling rendered by Impartial Hearing Officer Marcia K. Johnson ("IHO") on January 19, 2016, dismissing a special education due process complaint notice filed pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq. See* Decision and Order, attached as Exhibit A.

2) The dismissal of the due process complaint must be overturned as the Complaint is well pled under established case law.

3) The core issue in the underlying case is whether Defendant Board of Education of Bloom Township High School District No. 206 ("District") denied P.W., a student with autism and attention deficit hyperactivity disorder, a free appropriate public education by: failing to

evaluate him; failing to provide appropriate academic and transition educational services; and determining to graduate him before he had received appropriate transitional services to facilitate his integration into society.

4) Since he was eight years old, P.W. has been identified as a student with autism and has received specialized academic instruction, social work services, and functional skills instruction through his schools. His diagnosis of autism affects all aspects of his life, including school, work, social relationships and activities of daily living. He has significant deficits in adaptive functioning, problem solving, and conceptual understanding. With appropriate instruction and support, he is expected to learn skills to participate fully in post-secondary life, including competitive employment and community living. Without these necessary services, he will never be able to live independently or maintain employment.

5) During his last year in high school, P.W. received little to no special education services, including instruction and transition services, despite his well-documented disability-related needs and failing grades in the majority of his classes. The District did not reevaluate him to determine: his current skills level; whether his needs had changed; or his employment and independent living skills. Without explaining his right to defer graduation in order to continue to work on his academic and functional needs, the District graduated him and terminated his eligibility for special education at the end of his fourth year in school shortly after he turned eighteen.

6) As a result of the above denials, P.W. and his mother requested a due process hearing before the IHO seeking: reinstatement of his eligibility for special education; independent educational evaluations; and compensatory education services. Without holding an

evidentiary hearing, the IHO granted the District's Motion to Dismiss finding that P.W.'s claims were moot because he had been awarded a regular high school diploma.

7) The IHO's Order should be overturned because it is contrary to established law regarding a graduated student's right to seek relief for violations of his right to a free appropriate public education when he is contesting his graduation and seeking compensatory education services within the two-year statute of limitations.

8) This action is brought pursuant to the IDEA to appeal the IHO's Order and to allow P.W. his right to an evidentiary hearing for his asserted claims for violations of law based upon his status as a person with a disability.

## JURISDICTION AND VENUE

9) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2)-(3).

10) Venue is properly situated in this Court because the acts complained of occurred in the Northern District of Illinois and Defendants are subject to personal jurisdiction in the Northern District of Illinois.

## PARTIES

11) Plaintiff P.W. is a nineteen-year-old "child with a disability" pursuant to the IDEA. *See* 20 U.S.C. § 1401(3). At the time this cause of action arose, P.W. resided in Chicago Heights, Illinois, in the Northern District of Illinois where he currently resides. Until May 2014, P.W. was a student eligible for special education and related services under the disability categories of Autism and Other Health Impairment.

12) Cheryl W. is the mother and legal guardian of P.W. and is a "parent" within the meaning of IDEA. See 34 C.F.R. § 300.30.

3

13) Defendant Bloom Township High School District No. 206 ("District") is constituted within Illinois for administration of public schools located in the Northern District of Illinois. The District constitutes a "local educational agency" within the meaning of IDEA. See 34 C.F.R. § 300.28.

14) Defendant Dr. Lenell Navarre, Superintendent of the District, is named in his official capacity as District Superintendent.

15) Defendant Illinois State Board Of Education ("ISBE") is the state agency that administers public education in the state of Illinois. One of its functions is to oversee the due process hearing system in Illinois. ISBE has been named as a party for purposes of filing the administrative record for the underlying proceedings in this case.

## FACTS

16) P.W. is a nineteen-year-old young man diagnosed with Autism and Attention-Deficit/Hyperactivity Disorder who attended the District's Bloom High School from the fall of 2010 until he was improperly graduated from the District in May of 2014.

17) P.W. entered Bloom High School with an Individualized Education Program ("IEP") from his elementary school district under the disability categories of Autism and Other Health Impairment.

18) The last time P.W. was reevaluated by a school district was in 2008 when P.W. was in sixth grade. For over six years there was no evaluation conducted by any school despite the changes that would be expected to occur from when a student is 12 to the age 18. While he attended Bloom High School, he was never reevaluated to determine his present level of academic and functional performance, his disability-related needs, or his continued eligibility for special education.

4

19) The IDEA requires a student to be reevaluated every three years unless the school district and the parent agree that a reevaluation is unnecessary. 20 U.S.C. § 1414(a)(2)(A)-(B). Since P.W. had never been evaluated by the District, his mother was unaware of its obligation to conduct a reevaluation.

20) On October 18, 2013, the District convened a meeting to determine whether it would reevaluate P.W. without inviting a school psychologist, the district employee qualified to interpret previous psychological reports and determine the need for a reevaluation. The District recommended that no additional data be collected to determine P.W.'s present levels of performance and needs, despite his failing grades and widespread school failure at the time.

1) Unaware of her rights at the time, Cheryl W. signed the document affirming the District's recommendation not to reevaluate P.W.

2) P.W. was never reevaluated by the District.

3) Without an appropriate reevaluation, the IEP team did not have the data and information necessary to create an appropriate IEP. As a result, P.W.'s October 18, 2013 IEP did not even meet the basic requirements of the IDEA.

4) Despite documented concerns regarding P.W.'s organization, attention, socialization, and written responses, his IEP only included two goals: one to tour a community college and another to develop self-awareness and self-management through priority-setting and passing his classes. No other annual goals were included in P.W.'s IEP.

5) P.W.'s IEP did not provide for any special education despite his failure in three of his five general education classes.

6) P.W.'s transition services during the 2013-2014 school year were similarly deficient. The District conducted no formal transition assessments to develop P.W.'s transition

plan, did not provide measurable post-secondary outcomes, and did not provide transition goals focused on P.W.'s identified interests. P.W. did not receive any job shadowing, job training, or job coaching experiences to prepare him for full-time work. He never learned any independent living skills even though his transition plan questioned his ability to live independently on his own in the future.

7) While a May graduation for P.W. was discussed at the October 18, 2013 IEP meeting, no one on the IEP team explained P.W.'s right to defer graduation in order to learn skills necessary for further education, employment and independent living (transition services).

8) Cheryl W. and P.W. were not aware that P.W. could be eligible to receive continued transition services if he deferred graduation.

9) Throughout the 2013-2014 school year, P.W.'s mother expressed significant concern that P.W. was not making appropriate progress in his classes and that he would not meet the requirements for a regular high school diploma.

10) After October 2013, the District did not convene any IEP meeting to determine whether P.W. would achieve his IEP goals in order to be eligible for graduation or whether he needed continued educational experience in order to facilitate his requisite transition needs.

11) The IEP team never reconvened to discuss: whether P.W. met all of the requirements for graduation; whether he was eligible for graduation in light of his significant academic and social difficulties; or whether he met the requirements to graduate and terminate special education eligibility under the IDEA and implementing Illinois regulations.

12) Shortly before his graduation from Bloom High School, a teacher at the school contacted Cheryl W. to inform her that he would pass all of the required classes to graduate.

13) The District never provided P.W. or his mother with prior written notice of its

6

decision to graduate P.W.

14) P.W. graduated from the District on May 25, 2014.

15) In the summer following P.W.'s graduation, Cheryl W. contacted the District's Director of Student Services about P.W. being allowed to enroll in a transition program.

16) The District's Director of Student Services informed her that P.W. did not qualify for transition programming because his IQ score was in the average range.

17) During the following year, P.W. did not receive any educational services. Cheryl W. and P.W. provided full time care to P.W.'s grandmother who lives with dementia. She experienced several emergency medical incidents that required their attention, causing them to put on hold P.W.'s legal rights under the IDEA.

18) P.W. lacks the skills to function independently in his community. His mother supervises and prompts nearly all of his activities. He assists with the care of his elderly grandmother with tasks including cleaning, preparing simple meals, and assisting her movement throughout the house. P.W. cannot complete these tasks independently.

19) P.W. rarely leaves his home and does not have any social interaction with peers.

20) Cheryl W. became P.W.'s guardian in January 2015.

21) On June 30, 2015, Cheryl W., through Equip for Equality, requested the rescission of P.W.'s high school diploma and an IEP meeting to implement appropriate transition services due to the failure of the District to provide P.W. with appropriate transition services and a FAPE prior to his graduation.

22) On July 10, 2015, the District denied the request stating that P.W.'s eligibility for special education terminated upon his graduation.

23) Cheryl W. responded to the District's denial on July 17, 2015 again requesting a

remedy to the improper graduation and denial of a FAPE.

24) The District again denied Cheryl W.'s request for a meeting or remedy.

25) On October 16, 2015, Cheryl W. and P.W., through Equip for Equality, submitted a Due Process Complaint Notice claiming that the District had denied P.W. a free appropriate public education by:

    a) Failing to reevaluate P.W. from October 18, 2013 to the present

    b) Failing to develop appropriate IEPs, including failing to develop measureable annual goals and provide appropriate related services, to address all of P.W.'s unique needs and deficit areas from October 18, 2013 to the present;

    c) Failing to provide individualized transition services based on age-appropriate assessments to prepare P.W. for his post-secondary goals from October 18, 2013 to the present; and

    d) Improperly exiting P.W. from special education due to an inappropriate graduation.

26) Cheryl W. and P.W. sought the following relief:

    a) Restore P.W.'s eligibility for special education and related services under the IDEA;

    b) Pay for independent educational evaluations to include the following areas and to be conducted by qualified professionals for:

        i. Cognitive functioning;

        ii. Academic achievement, including reading, writing, and math;

        iii. Social emotional functioning;

        iv. Vocational performance; and

      v.    Independent living skills.

  c) Convene an IEP meeting to develop a transition program that implements the recommendations from the independent educational evaluations and, at a minimum, provides the following:

      vi.    Academic instruction;

      vii.    Job skills training;

      viii.    Job coaching;

      ix.    Independent living skills instruction;

      x.    Transportation;

      xi.    Post-secondary education research and application support; and

      xii.    Interpersonal relationship development instruction.

  d) Pay for P.W. to enroll in a driver's education course; and

  e) As compensatory education services, extend P.W.'s eligibility for special education and related services in accordance with the IDEA until the day before his 24th birthday.

27) ISBE appointed Impartial Hearing Officer Marcia K. Johnson to preside over the hearing.

28) The parties participated in mediation on November 12, 2015, but did not reach a resolution.

29) On December 8, 2015, the parties participated in a Pre-Hearing Conference.

30) During the Pre-Hearing Conference, the IHO raised her concern that P.W.'s claims were moot. The IHO requested that the District submit a Motion to Dismiss.

31) The District submitted a Motion to Dismiss arguing that P.W.'s claims were moot

9

because he had graduated from the District with a regular high school diploma.

32) P.W. and Cheryl W. responded that a graduated student's claims about a violation of a free appropriate public education are not moot when he is challenging his graduation and seeking compensatory education services.

46) On January 19, 2016, without holding an evidentiary hearing, the IHO issued a decision finding that all of P.W.'s claims were moot and ordering the dismissal of P.W.'s complaint.

47) In her decision, the IHO found:

a) The IDEA precludes children with disabilities who have graduated from high school with a regular diploma from receiving further special education services from the District and relieves the District from having to provide them;

b) Because P.W. was awarded a regular diploma, the entire matter was moot;

c) The due process complaint notice was not fair to the District because it had no notice prior to graduation that there were problems and there was nothing raised that could not have been raised prior to P.W.'s graduation;

d) The Parent did not produce enough credible evidence to show that the District did not properly award a regular diploma to P.W.;

e) The District's "awarding the child a regular high school diploma was not wrongful."

48) P.W.'s mother has timely filed this Complaint to appeal the administrative decision pursuant to 20 U.S.C. 1415(i)(2) and to assert that Cheryl W. and P.W.'s procedural right to a due process hearing was violated.

**COUNT I: VIOLATION OF IDEA (20 U.S.C. § 1400 et seq.)**

**THE IHO'S ORDER MUST BE OVERTURNED**

49) Paragraphs 1 through 48 above are incorporated as if fully set forth herein.

50) The IHO's Order violates IDEA and should be overturned because of the following legal errors that the IHO made when reaching her Decision:

    a) The IHO erroneously made findings of fact when deciding the Motion to Dismiss and did not consider all of the facts in the light most favorable to P.W. and Cheryl W.

    b) The IHO erroneously found, as a matter of law, that P.W.'s and Cheryl W.'s claims for relief for the District's violations of P.W.'s right to a FAPE while he attended Bloom High School from October 16, 2013 to May 2014 were moot because P.W. had graduated high school with a regular diploma, contrary to case law stating that these claims are not moot when the parent and student with a disability are seeking compensatory education services.

    c) The IHO erroneously found, as a matter of law, that P.W.'s and Cheryl W.'s claim for relief for the District's improper graduation was moot because P.W. had graduated high school with a regular diploma, contrary to case law stating that this claim is not moot when the parent and student with a disability are challenging the student's graduation.

    d) The IHO erroneously created a new statute of limitations whereby a parent or student with a disability must request a due process hearing prior to the student's graduation in order to challenge an inappropriate graduation or any denial of the student's right to a FAPE within the two year statute of limitations.

51) Therefore, the Plaintiffs appeal the Order rendered by Impartial Hearing Officer Marcia K. Johnson.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Court:

(a) Receive and review the record of the administrative proceedings below from the Illinois State Board of Education;

(b) Overturn the Order issued on January 19, 2016;

(c) Remand the case to the Illinois State Board of Education for a reconvened due process hearing;

(d) Order that the Illinois State Board of Education appoint a new impartial hearing officer to preside over the remanded due process hearing; and

(i) Grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/  Olga F. Pribyl
One of the Attorneys for Plaintiff

January 28, 2016

Olga F. Pribyl
Margaret M. Wakelin
EQUIP FOR EQUALITY, INC.
20 North Michigan, Suite 300
Chicago, IL 60602
(312) 341-0022