IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| P.W. and CHERYL W., individually and as Parent and Guardian of P.W., <br><br> Plaintiffs, <br> v. <br><br> BOARD OF EDUCATION OF BLOOM TOWNSHIP HIGH SCHOOL DISTRICT NO. 206; DR. LENELL NAVARRE, in his official capacity as Superintendent; ILLINOIS STATE BOARD OF EDUCATION, <br><br> Defendants. | Case No. 16 C 1571 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs P.W. and Cheryl W., individually and as Parent and Guardian of P.W., have filed a complaint against defendants Board of Education of Bloom Township High School District No. 206 ("District") and its Superintendent Dr. Lenell Navarre under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., seeking reversal of an administrative ruling issued by an impartial hearing officer ("IHO") dismissing plaintiffs' special education due process complaint notice. Defendants have moved for summary judgment (Doc. 26) and plaintiffs have moved to "reverse dismissal of claims and remand case to allow for a due process hearing" (Doc. 31). For the reasons described below, plaintiffs' motion for a reversal and remand is granted and defendants' motion for summary judgment is denied.

## BACKGROUND[1]

P.W. is a twenty year-old man who has been diagnosed with autism and attention deficit hyperactivity disorder ("ADHD") since he was eight years-old. Cheryl W. is P.W.'s foster and adoptive mother and became his court appointed legal guardian on January 22, 2015.

P.W. entered Bloom High School ("Bloom") in the fall of 2010 with an individualized education program ("IEP") from his elementary school district under the disabilities categories of Autism and other health impairments. He attended Bloom from fall 2010 until he graduated in May 2014. He received special education services from the District throughout his high school education.

Plaintiffs' due process complaint and the instant complaint both allege that no school district, including defendant District, has reevaluated P.W. as required by the IDEA since 2008. Although defendants deny this allegation, there is nothing in the AR to indicate any such evaluation, and defendant claims that Cheryl W. agreed that no formal reevaluation was necessary.

P.W. attended general education classes with resource support and social work services. He satisfied all state graduation requirements for a regular diploma and graduated on time in May 2014. On December 11, 2012, and again on October 18, 2013, the District notified P.W. and Cheryl W. that on April 26, 2014, when P.W. reached the age of eighteen, the right to make educational decisions would transfer to P.W. unless P.W. delegated those rights to someone else. P.W. did not delegate the rights to make educational decisions to Cheryl or any other person.

---

[1]The background facts are taken from the Administrative Record ("AR") and the parties' Local Rule 56.1 Statements of Material Fact.

On October 18, 2013, during P.W.'s senior year, the District held an IEP meeting to consider domains and to develop P.W.'s IEP. Both P.W. and Cheryl attended. At that meeting Cheryl signed a consent form indicating that she understood her rights, had received Procedural Safeguards, understood the scope of any proposed evaluation described on the domain page of the IEP, and agreed that no further evaluation was necessary.

Periodically throughout P.W.'s senior year, both he and Cheryl expressed to the school their desire that P.W. graduate on time. Cheryl communicated with P.W.'s teachers, expressing concern that P.W. was receiving failing grades and promising to work with him to make up missed assignments, complete future assignments timely, and ensure timely graduation. In May 2014, Cheryl was notified that P.W. would graduate on time. He attended all graduation activities and accepted a regular diploma.

On June 30, 2015, over a year after P.W. graduated, plaintiffs, now represented by counsel, requested an IEP meeting with the District and sought to rescind P.W.'s graduation. This was the first time that either Cheryl or P.W. had expressed any concern specifically directed to P.W.'s IEP, the services he had been provided, the need for an evaluation, a transition plan, or graduation, aside from Cheryl's communication with the teachers during P.W.'s senior year. The District denied the meeting because P.W. had already graduated.

After the District denied the meeting, plaintiffs requested a due process hearing.[2] The Illinois State Board of Education ("ISBE") appointed an IHO. The District moved to dismiss the due process complaint notice. After briefing, the IHO granted the motion, finding that

---

[2]The relief sought by plaintiffs included restoration of special education services, payment for an independent educational evaluation, an IEP meeting, and payment for a driver's education course.

"awarding the child a regular high school diploma was not wrongful," and as a result the matter was moot because "the obligation to make FAPE [free appropriate public education] available to all children with disabilities does not apply with respect to the following: . . . Children with disabilities who have graduated from high school with a regular diploma. 34 C.F.R. § 300.102(a)(3)(I)."

## DISCUSSION

Defendants have moved for summary judgment and plaintiffs have filed a motion to reverse and remand, which the court treats as a cross-motion for summary judgment. See Alex R. v. Forrestville Valley Community Unit School Dist. 221, 375 F.3d 603, 611 (7th Cir. 2004)("cross-motions for summary judgment might more accurately have been titled 'motions for judgment under the IDEA.'"). The traditional standards for reviewing a summary judgment motion do not apply in a case brought under the IDEA. Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997). The IDEA dictates that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. § 1415(i)(2). Thus, when neither party has requested the court to hear additional evidence and there is nothing new presented to the court, "the motion for summary is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S., 125 F.3d at 1052.

Both plaintiffs and defendants describe this as such a case, but they are not entirely correct. Although neither party has formally requested a hearing or to "present additional evidence," plaintiffs have submitted an affidavit from P.W. and numerous affidavits from

4

Cheryl, none of which were before the IHO and are not part of the AR. Defendants have moved to strike those affidavits (doc. 54), but the IDEA mandates that the court accept any additional evidence at the request of a party. 20 U.S.C. § 1415(i)(2)(c). The court considers plaintiff's submission as such a request and denies defendant's motion.

As the party challenging the outcome of the administrative proceeding, plaintiffs bear the burden of proof by a preponderance of the evidence. Alex R., 375 F.3d at 611. In its review, this court is required to "give due weight" to the decision of the IHO on issues of fact, id., and should not substitute its "own notions of sound educational policy for those of the school authorities of which they review." Board of Education of Murphysboro Community Unit School Dist. No. 186 v. Illinois State Board of Education, 41 F.3d 1162, 1166 (7th Cir. 1994). This measure of deference recognizes that "courts [as opposed to the IHO] do not have special expertise in the area of educational policy." Id. at 1166-67.

The amount of deference or "due weight" to be given to the IHO's decision depends on the amount of "new" evidence considered by the court. Alex R., 375 F.3d at 612. Where the court does not take new evidence and relies solely on the administrative record, it owes "considerable deference" to the IHO, and may set aside the decision only if the court is "strongly convinced that the order is erroneous." Id. This standard of review is akin to the clear error or substantial evidence standards. Id.

On the other hand, the more the court relies on new evidence the less it should defer to the administrative decision. "Judicial review is more searching the greater the amount (weighted by significance) of the evidence that the court has but the agency did not have." Id. In such circumstances, although still part of the case, the AR is accorded less weight. Under no

circumstances, however, should the court "go so far as to conduct a trial de novo." Id. Finally, the decision of the IHO is entitled to no deference on issues of law. Id. at 611-12.

In the instant case, the IHO did not conduct a hearing and made only one finding of fact. After finding that the award of a regular high school diploma was not "wrongful," the IHO concluded that the matter was moot. She based her decision on 34 C.F.R. § 300.102(a)(3)(I), which she concluded:

> precludes children with disabilities who have graduated from high school with a regular diploma . . . from receiving further special education services from the District and relieves the District of having to provide a FAPE to those children. This portion of the IDEA clearly states when special education services end.

In her opinion, the IHO recognized that numerous courts have held that claims for past violations may proceed even after a student is no longer eligible for special education due to graduation or age. See e.g., Brett v. Goshen Community School Corp., 161 F.Supp.2d 930, 943 (N.D. Ind. 2001) (and cases cited therein) (permitting a 24 year-old to seek compensatory relief despite his graduation); McCormick v. Waukegan School Dist. No. 60, 374 F.3d 564, 568 n.1 (7th Cir. 2004) ("graduation from high school does not necessarily eliminate the possibility of receiving benefits under IDEA."). As these cases and others like them recognize, although the right to correct future violations cannot extend beyond graduation or the age of 21, "a student who was deprived of services to which he was entitled under the IDEA has a right to a remedy in the form of compensatory education, regardless of his eligibility for current or future services under the Act." Pihl v. Mass. Dept. of Educ., 9 F.3d 184, 189 (1st Cir. 1993). The Seventh Circuit has expressly adopted Pihl's standard of compensatory education in Board of Education v. Illinois State Board of Education, 79 F.3d 654, 656 (7th Cir. 1996).

Despite these cases, the IHO determined that the instant case was moot because plaintiffs had not objected to P.W.'s graduation and willingly accepted the diploma. It is true, as the IHO pointed out, that in each of the cases cited by plaintiffs in opposition to defendants' motion to dismiss the due process complaint, compensatory education had been granted "because the regular high school diploma was awarded in spite of objections to graduation (for many reasons) made prior to graduation." But, as plaintiff argues, none of those cases made pre-graduation objection a prerequisite to a claim or recovery for compensatory education, and this court has found none, probably because such a requirement is inconsistent with the Act's remedial scheme. See Brooks v. District of Columbia, 841 F.Supp.2d 253, 259 (D. D.C. 2012).

In addition, the Act has a two year statute of limitations which includes a discovery rule. 20 U.S.C. § 1415(f)(3)C), (D). Plaintiffs have brought this action within two years of graduation. Although not presented to the IHO, plaintiffs have submitted to this court Cheryl's affidavits in which she states that she did not discover that P.W. was wrongly graduated or that he had been denied a FAPE until well after graduation. She also states that she was not fully informed of P.W.'s rights to transition services when she agreed to graduation and when she agreed no further evaluation was needed, and that she would not have agreed to graduation had she known of available alternatives.

It is unclear whether the IHO would have reached the decision to dismiss had she been presented with Cheryl's affidavits or the facts contained therein. It is also unclear why plaintiffs did not present the information to her. Nor can the court tell from the IHO's opinion whether her finding that the award of a regular high school diploma was not wrongful was simply a finding that P.W. had met the state graduation requirements, or whether she was finding that the District

7

had complied with his IEP. Indeed, it appears that the IHO may, in effect, have accepted the District's argument that plaintiffs' claims were barred by the doctrine of laches.[3] As the Supreme Court held in Petrella v. Metro-Goldwyn-Mayer Inc., __ U.S. __, 134 S.Ct. 1962, 1974 (2014), "in the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." In any event, the conclusion that P.W.'s graduation mooted the case is a legal conclusion that deserves no deference and with which this court disagrees. Consequently, the court grants plaintiffs' motion to reverse and remand and denies defendants' motion for summary judgment.

## CONCLUSION

For the reasons described above, plaintiffs' motion to reverse and remand (Doc. 31) is granted. Defendants' motion for summary judgment (Doc. 26) and to strike (Doc. 54) are denied. This matter is remanded to the ISBE to conduct a due process hearing on the merits of plaintiffs' claims.

**ENTER:** **August 24, 2016**

_____
**Robert W. Gettleman
United States District Judge**

---

[3]For example, the IHO's decision refers repeatedly to plaintiffs' delay in requesting an IEP meeting and a due process hearing, and concludes that the relief sought would be "unfair" to the District.